# EXHIBIT B

# Complaint

SCANNED 27

20-2-00701-37
CMP          3
Complaint
8256040

FILED
2020 MAY 29   AM 10: 33
WHATCOM COUNTY
WASHINGTON
BY

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

## IN AND FOR WHATCOM COUNTY

| | |
|---|---|
| Plaintiffs: | No. 20 2 00701 37 |
| SCOTT HILLIUS; TOM STAEHR; DANIEL AND SONJA LYONS; DOUGLAS AND ANGELIQUE SCARLETT; MARK MIEDEMA; MARK and CHERI HOLMES; STEVEN AND LISA ZEHM, | COMPLAINT |
| vs. | JUDGE: |
| Defendants: | |
| MAO HUA CHEN; 18 PARADISE LLP; MOUNT TAI INVESTMENT INC.; MOUNT EMEI INVESTMENT INC.; WILLIAM (MICK) O'BRYAN; JOSH WILLIAMS; MJ MANAGEMENT, LLC; and the CITY OF LYNDEN | |

For their Complaint, Plaintiffs allege as follows:

## I. PARTIES

1.     Plaintiffs Scott Hillius ("Hillius") is a resident of Whatcom County and the owner of the property commonly known as 268 West Mayberry Drive, #202, Lynden, WA 98246 (the "Hillius Property"). The Hillius Property is subject to the CC&Rs (defined hereafter).

COMPLAINT: 1

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

2.      Plaintiffs Tom Staehr ("Staehr") is a resident of Whatcom County and the owner of the property commonly known as 8858A Depot Road, Lynden, WA 98264 (the "Staehr Property"). The Staehr Property is subject to the CC&Rs.

3.      Plaintiffs Daniel and Sonja Lyons, husband and wife, ("Lyons") are residents of Whatcom County and owners of the property commonly known as 300 Homestead Blvd, Unit 101, Lynden, WA 98264 (the "Lyons Property"). The Lyons Property is subject to the CC&Rs.

4.      Plaintiffs Douglas and Angelique Scarlett, husband and wife, are residents of Whatcom County and owners of the property commonly known as 815 Bentgrass Way, Lynden, WA 98264 (the "Scarlett Property"). The Scarlett Property is subject to the CC&Rs.

5.      Plaintiffs Mark Miedema is a resident of Whatcom County and the owner of the property commonly known as 2040 Greenview Lane, Lynden, WA 98264 (the "Miedema Property"). The Miedema Property is subject to the CC&Rs.

6.      Plaintiffs Mark and Cheri Holmes, husband and wife, ("Holmes") are residents of Whatcom County and owners of the property commonly known as 124 Twin Sister Loop, Lynden, WA 98264 (the "Holmes Property"). The Holmes Property is subject to the CC&Rs.

7.      Plaintiffs Steven and Lisa Zehm, husband and wife, ("Zehm") are residents of Whatcom County and owners of the property commonly known as 1965 Emerald Way, Lynden, WA 98264 (the "Zehm Property"). The Zehm Property is subject to the CC&Rs.

COMPLAINT: 2

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

8.      Defendant Mao Hua Chen, aka Morris Chen ("Chen") is an individual, resident in British Columbia, Canada.

9.      Defendant 18 Paradise LLP ("Paradise") is a Washington limited liability partnership.

10.     Defendant Mount Emei Investment Inc. ("Mount Emei") is purported to be a Delaware Corporation and partner in Paradise.

11.     Defendant Mount Tai Investment Inc. ("Mount Tai") is purported to be a Delaware Corporation and partner in Paradise.

12.     Paradise, Mount Emei, and Mount Tai are collectively referred to as the "Chen Affiliates".

13.     Defendant MJ Management, LLC ("MJ") is a Washington limited liability company.

14.     Defendant William (Mick) O'Bryan ("Mick") is and individual, resident in Whatcom County and a governor of MJ.

15.     Defendant Josh Williams ("Josh") is an individual, resident in Whatcom County and a governor of MJ.

16.     Defendant City of Lynden (the "City") is a Washington State municipality. The City is named as a defendant only for purposes of the Declaratory Judgment Action pursuant to RCW 7.24.110, which requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration." No affirmative relief, costs, fees or other remedy is sought from the City.

COMPLAINT: 3

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

## II. JURISDICTION AND VENUE

17.     This Court has personal and subject matter jurisdiction over the parties and claims in this action.

18.     Venue for this action is appropriate in Whatcom County Superior Court pursuant to RCW Chapter 4.12.

## III.  FACTUAL ALLEGATIONS

**A.     Background Facts.**

19.     In the early 1990s, James Wynstra ("Wynstra") and his company Homestead Northwest, Inc. ("HNW") developed a plan for a new golf course (the "Golf Course") and surrounding residential development in Lynden, Washington.

20.     HNW planned to develop the project as a Planned Residential Development ("PRD") under Chapter 19.29 of the Lynden Zoning Code. A PRD develops an entire neighborhood according to a systematic plan. The property for the proposed PRD consisted of approximately 250 acres, of which 140 were for the Golf Course and 110 were for residential development.

21.     On June 24, 1992, HNW also recorded a document entitled "Master Declaration of Covenants, Conditions, Restrictions and Reservations for Homestead, a Planned Residential Development" (the "CC&Rs") with the Whatcom County Auditor.

22.     On July 20, 1992, HNW and the City entered into a binding contract for the Homestead PRD (the "PRD Agreement").

23.     The PRD Agreement required HNW to use the CC&Rs for all developments within the Homestead PRD.

COMPLAINT: 4

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

24.     The PRD ordinance in effect when the PRD Agreement was signed requires the formation of a homeowners association. Specifically,

a.      Section 19.29.020 provided: "To preserve community facilities and open space, every PRD shall have a homeowner's association and agreements to fund such an organization."

b.      Section 19.29.080(B) provided: "Private streets are to be maintained by the PRD property owners through dues collected as part of a homeowner's association.

c.      Section 19.29.080(F) provided: "Control of land area reserved for visitors must be maintained by the homeowners' association."

d.      Section 19.29.090 provided: "A homeowner's association shall be formed as a part of the PRD."

e.      Section 19.29.090(B) provided: "The homeowner's association may provide restrictive covenants and shall provide for homeowner's dues schedules for maintenance of common grounds and facilities."

25.     Section 19.29.090(D) provided: "Privately owned land may be designated as common open space, if the owner of such privately owned land" "Provides assurance satisfactory to the Public Works Director that the open space will be maintained in perpetuity and will only be used for the purposes intended as a part of the PRD," and "Establish a formula for the assessment of maintenance dues by the homeowners and rules whereby the common land may be turned over to the homeowners."

26.     Paragraph 2.3 of the CC&Rs provides that Common Open Space is intended for the common use of all Parcel Owners in Homestead. Details of the

COMPLAINT: 5

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

ownership, management, maintenance and phasing of the Common Open Space are described in Articles III and V of the CC&Rs.

27.     Paragraph 2.3 concludes by stating: "The term 'Common Open Space' as used herein does not and shall not include the golf course, clubhouse, R.V. storage and maintenance areas. It includes only the property described on Exhibit B and any phased amendments thereto."

28.     Paragraph 1.3.5 defines a "Parcel" shall mean a record Lot or a Condominium Unit within the Property.

29.     Paragraph 1.3.7. defines "Owner" shall mean and refer to the record owner whether one or more persons or entities of fee simple title to any Lot or Condominium Unit which is part of the Property.

30.     HNW wanted to defer the formation of the HOA until the PRD was completely built out so that all Parcel Owners could participate in its formation and for efficiencies in completing the development of the PRD.

31.     The CC&Rs formally create the Homestead Owners Association ("HOA") as an unincorporated association until the common areas are conveyed by the Declarant.

32.     The City agreed that HNW could fill the role of the HOA until completion of the PRD, but did not waive the ordinance's requirement for an association of the owners.

33.     For these reasons, HNW included a provision in the CC&Rs stating that it would act as the homeowner association and turn the Common Open Space over to the HOA later.

COMPLAINT: 6

34.     The City agreed to this procedure in the PRD Agreement.

35.     After the PRD Agreement was executed, HNW recorded a number of additional plats and condominiums within the PRD.

36.     HNW also amended the Declaration to include other properties that were not part of the original PRD. Those properties are subject to the CC&Rs.

37.     HNW was forced to sell its interest in the Homestead PRD because of financial difficulties in 2010.

38.     When HNW sold its interest in 2010, the build out of the PRD was not complete.

39.     After liquidating its other holdings, HNW sold the Golf Course and the balance of its interest in the PRD to Raspberry Ridge, LLC in 2010.

40.     HNW also assigned its Declarant rights and responsibilities under the CC&Rs to Raspberry Ridge.

41.     The PRD development was complete not later than 2013.

42.     The PRD Agreement stated that when the PRD was complete, it would have approximately 8 acres of parks and Common Open Space.

43.     The PRD as completed contains less than 9 acres of Common Open Space.

44.     In December 2013 Raspberry Ridge sold the Golf Course to Paradise.

45.     Raspberry Ridge assigned its rights and obligations under the CC&Rs to Paradise as part of the sale of the Golf Course.

46.     Since assuming the Declarant's rights and obligations under the CC&Rs in 2013, Paradise has failed to perform its obligations under the CC&Rs.

COMPLAINT: 7

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

47.     Paradise has treated the Common Open Space maintenance fees ("Fees") as ordinary income of the Golf Course.

48.     In 2015, Paradise charged the Parcel Owners monthly Fees of $30.00

49.     The total 2015 Fees for all Parcel Owners was over $200,000, or over $20,000 per acre of Common Open Space.

50.     In a December 1, 2015 letter, Paradise unilaterally increased the Fees for 2016 by $1.50 per Parcel Owner per month to $31.50. In that letter, Paradise stated that the increase was the "result of increased maintenance costs."

51.     In a December 1, 2016 letter, Paradise announced a unilateral increase in the Fees for 2017 by $1.58 per Parcel Owner per month to $33.08. In that letter, Paradise stated that the increase was the "result of increased maintenance costs."

52.     In a subsequent December 12, 2016 letter, Paradise clarified that the Fees would increase to $33.00 for 2017, not $33.08 and said that the increase was because of the Washington State increase in the minimum wage.

53.     In a November 27, 2017 letter, Paradise announced that the Fees would increase to $34.50 for 2018 and said that the increase was because of "rising costs of expenses and the increased minimum wage."

54.     In a November 20, 2018 letter, Paradise announced that the Fees would increase to $36.00 for 2019 and said that the increase was because of "rising costs of expenses and the increased minimum wage."

55.     Paragraph 17 of the PRD Agreement provides that:

The covenants, conditions and restrictions submitted to the City and herein referred to will be placed in force upon the property covered by this plan and will not be altered or amended without the consent of the City.

COMPLAINT: 8

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

56.     On July 1, 2019, Paradise unilaterally recorded a Sixth Amendment to the CC&Rs. The Sixth Amendment stated that Paradise "may impose on any and all Parcel Owners a special assessment for the purpose of funding improvements to the Common Open Space and/or maintaining a reserve fund for anticipated, extraordinary or unanticipated expenses for maintaining the Common Open Space."

57.     Paragraph 3.3 of the CC&Rs states that "All costs and expenses of maintenance of and improvements to the Common Open Space shall be paid by the Declarant." The Sixth Amendment contradicted the terms of the CC&Rs.

58.     Paradise did not obtain the consent of the City to its Sixth Amendment to the CC&Rs.

59.     On August 9, 2019, Paradise unilaterally imposed a special assessment ("Special Assessment") of $83.00 on every Parcel Owner purportedly to pay for repairs of storm damage.

60.     Plaintiffs and members of the proposed class paid the Special Assessment.

61.     The August 9, 2019 Special Assessment totaled over $50,000.

62.     On December 4, 2019, Paradise unilaterally recorded a Seventh Amendment to the CC&Rs. The Seventh Amendment stated: "The failure to increase maintenance fees in one or more years does not waive the right to increase fees the following year up to the maximum combined amount for all years."

63.     Paradise did not obtain the consent of the City to its Seventh Amendment to the CC&Rs.

COMPLAINT: 9

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

64.     The Seventh Amendment did not modify the existing provision in the CC&Rs requiring the Declarant to give notice of any increase in the fee in December of the year before the increase would take effect.

65.     The Seventh Amendment does not state that it was retroactive or affected vested rights.

66.     The Seventh Amendment was not retroactive.

67.     In a December 4, 2019 letter, Paradise announced that the Fees would increase to $93.00 for 2020. In the letter, Paradise stated that the increases from 2016-2018 "have been inadequate in covering the bare minimum expenses required to maintain the common open space and cannot continue to operate at a deficit."

68.     The notice explained that the increase represented a retroactive 5% annual increase to the initial $25 fee every year back to 1993.

69.     Under the $93 monthly fee, Paradise would receive over $650,000 annually from the Parcel Owners.

70.     When Parcel Owners complained about the increase, Paradise convened a series of meetings with Parcel Owners.

71.     At one of those meetings, Paradise presented the Parcel Owners with a Homestead Farms Golf Club Joint Maintenance Fees Profit & Loss, January through December 2019 (the "P&L").

72.     At the meetings, Paradise represented that the P&L was truthful and accurate.

73.     According to the P&L, Paradise received $253,946.91 in Fees and $35,600.99 in Special Assessments in 2019 for total Fees of $289,547.90.

COMPLAINT: 10

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

74. According to the P&L, Paradise incurred expenses of $346,065.93 performing its duties under the CC&Rs, and incurred a loss of $56,518.04 for the work.

75. Parcel Owners present at the meeting offered to relieve Paradise of that burden by accepting conveyance of the Common Open Space to the HOA and assuming responsibility for the work and expenses.

76. Paradise rejected that offer.

77. In truth, the amounts set forth on the P&L are false, and Paradise has earned a substantial profit from the Common Open Space Fees every year it has owned the Golf Course.

78. Paradise increased the Fees to increase its profitability.

79. Paradise prepared and presented the P&L to justify an increase in the Fees from $36.00 to $93.00 per Parcel Owner per month commencing in January 2020.

80. Paradise deliberately misrepresented the P&L with the intent to induce the Parcel Owners to pay the increased Fees.

81. Many Parcel Owners agreed to pay and have paid the $93 annual monthly fee in reliance on the truth of Paradise's P&L.

82. Paradise also presented the Parcel Owners with a 2020 Budget for the work required under the CC&Rs (the "Budget").

83. According to the Budget, Paradise expects to incur costs totaling $652,095.00 performing its duties under the CC&Rs in 2020.

84. According to the Budget, Paradise expects to receive $656,027.00 in Fees in 2020.

COMPLAINT: 11

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

85.     In truth, the Budget falsely overstates the actual expenses expected by Paradise and includes expenses that will not be incurred at all.

86.     Paradise prepared and presented the Budget to justify an increase in the Fees from $36.00 to $93.00 per Parcel Owner per month commencing in January 2020.

87.     Paradise deliberately misrepresented the Budget with the intent to induce the Parcel Owners to pay the increased Fees.

88.     Many Parcel Owners agreed to pay and have paid the $93 monthly Fees in reliance on the truth of Paradise's Budget.

89.     Many Parcel Owners are retirees on fixed incomes. The increased fee has caused financial hardship for many members of the proposed class.

90.     At meetings with the Parcel Owners, Paradise threatened to file liens against the title of any Parcel Owner who failed to pay the contrived Fees.

91.     Many Parcel Owners are afraid and intimidated by the conduct of Paradise.

92.     The increases in the Fees have diminished the value of the Parcels.

93.     Paradise also presented the Parcel Owners with a Summary of Storm Assessment Expenses ("Summary") for the Special Assessment in 2019.

94.     According to the Summary, Paradise spent $50,993 on common areas in response to storms in 2018 and 2019.

95.     Paradise in fact spent substantially less than $50,993 on common areas in response to storms in 2018 and 2019.

96.     Paradise prepared and presented the Summary to justify its demands in the Special Assessment.

COMPLAINT: 12

97.     Paradise deliberately misrepresented the storm costs with the intent to induce the Parcel Owners to agree to the Special Assessment.

98.     Paradise intends to retain ownership of the Homestead PRD common areas and continue to charge Homestead PRD owners increasingly excessive Fees in perpetuity.

## IV. CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring this action on behalf of themselves and on behalf of a proposed class consisting of Parcel Owners subject to the CC&Rs (the "Class Members").

100.    The Class Members consists of over 600 Parcel Owners.

101.    It would be impractical at best to join all Class Members in a single action.

102.    The legal and factual issues in this action are identical with respect to each of the Class Members. Each of the Class Members were subject to exactly the same payment demands by defendants and affected in exactly the same way by defendants' conduct.

103.    The claims of the named Plaintiffs are typical of claims of the Class Members. None of the named Plaintiffs has any different or additional claims against defendants.

104.    The named Plaintiffs are personally and financially prepared to fairly and adequately represent the interests of the Class Members.

105.    If the Class Members each brought their own actions, there would be a high risk of inconsistent adjudications of legally identical claims and/or res judicata or collateral estoppel effects of earlier cases on later ones.

COMPLAINT: 13

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

106.    The Court's determination of the merits of the claims of some of the members of the class would as a practical matter decide the merits of the claims of other members who did not participate in the action.

107.    The defendants have acted in exactly the same manner with respect to all Class Members. The Court should render a single decision applicable to all Class Members.

108.    The common questions between members of the class predominate over any potential differences. Potential differences primarily concern the period and resulting amount of damages, but all claims will be decided under the same standard.

109.    A significant portion of Class Members have already opted to participate in this class action and have requested class action certification.

110.    The Court should certify this action as a class action pursuant to CR23.

### V. CAUSES OF ACTION

**A.      Consumer Protection Act, RCW Chapter 19.86 Against Paradise**

111.    Defendant Paradise performed the following unfair and/or deceptive acts and practices:

a.      Paradise collected Fees that were intended to be used to maintain and repair Homestead PRD common areas and used those Fees for its own benefit.

b.      Paradise has treated the Fees as ordinary income of the golf course.

c.      Paradise misrepresented the reason for the increase in the Fees in its December 1, 2015 letter.

COMPLAINT: 14

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

d.  Paradise misrepresented the reason for the increase in the Fees in its December 1, 2016 letter.

e.  Paradise misrepresented the reason for the increase in the Fees in its December 16, 2016 letter.

f.  Paradise misrepresented the reason for the increase in the Fees in its November 27, 2017 letter.

g.  Paradise misrepresented the reason for the increase in the Fees in its November 20, 2018 letter.

h.  Paradise purported to amend the Master Declaration with its 6th and 7th Amendments without first securing the required consent from the City.

i.  Paradise imposed a $83.00 special assessment on Parcel Owners without legal authority to do so and based on misrepresentations of the grounds thereto.

j.  Paradise retroactively imposed increases in the Fees contrary to the vested rights of the Parcel Owners.

k.  Paradise misrepresented the reason for the increase in the Fees in its December 4, 2019 letter.

l.  Paradise falsely represented its actual profit and loss in the P&L.

m.  Paradise falsely represented its actual and anticipated expenses in the 2020 Budget.

n.  Paradise falsely represented its actual and anticipated expenses in the Summary of Storm Assessment Expenses.

o.  The above list is not inclusive or complete.

COMPLAINT: 15

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

112.    The conduct of Paradise alleged above constitutes unfair and deceptive acts or practices in violation of RCW 19.86.020.

113.    Paradise committed the unfair and/or deceptive act and practices in the conduct of its business.

114.    Violation of the Consumer Protection Act, RCW 19.86.020 committed by Paradise occurred in trade or commerce.

115.    The unfair and/or deceptive act and practices set forth herein affected the public interest pursuant to RCW 19.86.093 because the injured hundreds of Parcel Owners and have the capacity to continue to injure hundreds more.

116.    Plaintiffs and the of Class Members have been injured in their business or property as a proximate result of the unfair and/or deceptive acts and practices because they incurred financial losses in the amount of the payments made and because their properties lost value as a result of the increased Fees.

117.    The unfair and/or deceptive acts and practices as alleged herein were the direct and proximate cause of the harm incurred by Plaintiffs and Class Members.

118.    Plaintiffs and Class Members have incurred damages in an amount to be proven at trial.

119.    Pursuant to RCW 19.86.090, Plaintiffs and Class Members are entitled to exemplary damages of three times their actual damages up to $25,000 per violation.

120.    Pursuant to RCW 19.86.090, Plaintiffs and Class Members are entitled to a permanent injunction prohibiting Paradise from continuing its unfair and/or deceptive acts or practices.

COMPLAINT: 16

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

**B.      Consumer Protection Act, RCW Chapter 19.86 Against Mao Hua Chen;**

**Mount Tai Investment Inc.; and Mount Emei Investment Inc.**

121.    As the partners of Paradise, Defendants Mount Tai and Mount Emei are liable for the violations of the Consumer Protection Act by Paradise.

122.    As the shareholder of Mount Tai and Mount Emei Chen is liable for their violation of the Consumer Protection Act.

123.    Chen, Mount Tai and Mount Emei are all liable for all damages awarded against Paradise under the Consumer Protection Act.

**C.      Consumer Protection Act, RCW Chapter 19.86 Against Mick; Josh; and MJ**

124.    Defendants Mick, Josh, and MJ performed the actions that constituted violations of the Consumer Protection Act.

125.    Defendants Mick, Josh, and MJ are each personally liable for their conduct in violation of the Consumer Protection Act.

126.    Defendants Mick and Josh are the members of MJ.

127.    Defendants Mick and Josh are liable for MJ's violations of the Consumer Protection Act.

**D.      Breach of Contract Against Paradise**

128.    The Master Declaration constitutes a valid and enforceable contract between the Parcel Owners and the successor Declarant, Paradise.

129.    The Master Declaration provides that "All costs and expenses of maintenance of and improvements to the Common Open Space shall be paid by the Declarant, its heirs, successors and assigns."

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

130.   The Master Declaration provides that Declarant shall maintain the Common Open Space to a high standard.

131.   The Master Declaration provides that Parcel Owners shall pay a monthly fee "so that the Common Open Space may be properly managed and maintained" and that "payments for costs and expenses shall be funded by joint maintenance fees provided by Parcel Owners other than the Declarant."

132.   The Master Declaration provides that the "Homestead Owners Association" (HOA) was created upon recordation.

133.   The Master Declaration provides that the HOA "shall operate in advisory capacity" to the Declarant until the Declarant conveys the Common Open Space to the HOA.

134.   The Master Declaration provides that upon conveyance of the Common Open Space to the HOA, "the total Assessment shall be equal to monies reasonably necessary to manage, maintain, and improve the common open space and to pay for the utilities, taxes, insurance, and administrative expenses of the Association," and that "each parcel shall bear an equal share of such Assessments."

135.   The Master Declaration provides that the Common Open Space in Maberry 1 was "TRACT A" AS IT APPEARS ON THE FACE OF MABERRY PLAT."

136.   Said Tract A is an irregular parcel of 276,520 square feet or 6.35 acres. Tract A is an unimproved track containing trees, areas of rough grass, a hiking trail, and Fish Trap Creek. Tract A is not and never has been used for any purpose other than hiking, protection of Fish Trap Creek, and a buffer from the Golf Course.

COMPLAINT: 18

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

137.    On October 26, 1992, HNW amended the Declaration to expand the Common Open Space to include areas so designated in existing or future plats within a specified area.

138.    On May 6, 1994, HNW amended the Declaration to expand the Common Open Space to include areas so designated in existing or future plats within a specified area.

139.    On June 14, 1994, HNW amended the Declaration to expand the Common Open Space to include designated portions of the HOMESTEAD SOUTH PHASE I ALTERED PLAT OF JANSEN'S TOWN & COUNTRY ESTATES DIVISION NO. 1 and the PLAT OF JANSEN'S TOWN & COUNTRY ESTATES, DIVISION NO. 2. The added areas were not part of the Homestead PRD.

140.    On June 21, 1995, HNW amended the Declaration to expand the Common Open Space to include areas so designated in existing or future plats within a specified area.

141.    The intention of the parties to the Master Declaration was for HNW to have the rights and obligations of the future HOA.

142.    The initial $25 monthly homeowner Fees was a good faith estimate of the anticipated cost for HNW to maintain Tract A in Maberry 1 with contributions from the 33 parcels in Maberry 1.

143.    The Declaration requires that the Fees be spent on the maintenance of the Common Open Space.

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

144.   The increases in the Fees provided for in the Master Declaration were intended to be exercised only if and to the extent that the actual cost of maintenance exceeded the Fees.

145.   Following its acquisition of the Declarant interest under the Master Declaration, Paradise has treated the Fees as income.

146.   Paradise has failed to perform its duty to maintain the Common Open Space.

147.   Paradise has increased the monthly Fees to increase its profits, and not because the cost of maintenance exceeded the Fees.

148.   Paradise issued a Special Assessment in 2019 to cover unanticipated costs relating to storm damage.

149.   The Master Declaration provides that the Declarant is responsible for the cost of maintenance and the Special Assessment was contrary to the terms of the Master Declaration.

150.   Every contract carries with it an implied duty to act in good faith which obligates parties to cooperate with each other so that each may obtain the full benefit of performance.

151.   Paradise has breached the express terms of the Master Declaration, the intent as expressed by the parties, and the implied covenant of good faith.

152.   Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

**E.    Express and Constructive Trust Against Paradise**

153.    Pursuant to the terms of the Master Declaration, the Declarant was to retain fee ownership of the Common Open Space for the benefit of the Parcel Owners.

154.    Pursuant to the terms of the Master Declaration, the Common Open Space was "intended for the common use of all property owners in Homestead."

155.    Pursuant to Section 19.29.090(D) of the Lynden PRD ordinance, privately owned land in a PRD may be common space only if it will "be maintained in perpetuity and will only be used for the purposes intended as a part of the PRD."

156.    The Declarant therefore had ownership of the Common Open Space with a perpetual duty to maintain and a prohibition against other uses.

157.    The Master Declaration creates a trust relationship in which the Declaration would retain ownership of the Common Open Space in trust for the Parcel Owners.

158.    As trustee, the Declarant owes the Parcel Owners fiduciary duties.

159.    Paradise has violated its fiduciary duties with self-dealing, conflicts of interest, failure to perform duties, and dishonesty.

160.    The Court should rule that Paradise holds the Common Open Space in trust for the Parcel Owners, award Parcel Owners damages in an amount to be proven, and order Paradise to relinquish and convey the trust property to the HOA in accordance with the CC&Rs.

**F.    Federal Civil RICO, 18 U.S.C. 3 1962(c) Against Chen, Chen Affilliates, MJ, Mick and Josh**

161.    Plaintiffs bring this action under 18 U.S.C. 1962(c) ("RICO").

COMPLAINT: 21

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

162.    Defendants, Chen, Chen Affilliates, MJ, Mick and Josh violated RICO and Plaintiffs and the Class Members were injured as a result.

163.    Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

164.    The Enterprise. Defendants form an association-in-fact for the common and continuing the purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. §1961(4) that engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown or unnamed at this time.

165.    The enterprise has engaged in, and their activities have affected, interstate and foreign commerce.

166.    Pattern of Racketeering Activity. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly. in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(3), and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

167.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(I)(B), as more specifically

COMPLAINT: 22

alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

168.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately 2013 and continuing to the present, and there is a continued threat of repetition of such conduct.

169.    The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of operating a golf course and related amenities. Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

170.    Plaintiffs specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

171.    101. Predicate Act: Use of Mails and Wires to Defraud Plaintiffs in Violation of 18 U.S.C. 1341 and 1343. Defendants committed acts constituting indictable offenses under 18 U.S.C. 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Plaintiffs or to obtain money from Plaintiffs by means of false or fraudulent pretenses, representations or promises. For the purpose of

COMPLAINT: 23

executing their scheme or artifice, Defendants caused delivery of various documents and things by the U S . mails or by private or commercial interstate carriers, or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate and foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business. or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

172.    Defendants carried out their scheme in different states and countries and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires. Specifically, Defendants used wire and/or U.S. mail or private or commercial carriers to create and record the 6th and 7th amendments to the Master Declaration, to notify Plaintiffs of increased fees and special assessments, and to receive payment of the same.

173.    Defendants' shared objective was, and is, to divert funds to their own benefit and to facilitate the continuation of the wrongful demands for payment.

174.    Continuity of Conduct. Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiffs and other Class Members, constituted a continuous course of conduct spanning a period from approximately 2013 to the present, and was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said

COMPLAINT: 24

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

violations were a part of a pattern of racketeering activity under 18 U.S.C. 1961(l) and (5).

175.    Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. 1962(c).

176.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs in their property and business. Plaintiffs seek an award of damages in compensation for, among other things, the amounts Defendants stole from them.

177.    Plaintiffs accordingly seek an award of three times the damages they sustained.

178.    Plaintiffs further seek recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

**G.    Declaratory Judgment**

179.    Plaintiffs and Class Members are persons interested under the PRD Agreement originally between HNW and the City.

180.    As the Successor Declarant, Paradise is a part of the PRD Agreement and bound by its terms.

181.    Pursuant to the PRD Ordinance in effect when the PRD Agreement was executed, the PRD Agreement applies to Plaintiffs and Class Members.

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265

182.   A justiciable controversy exists between Plaintiffs and Paradise regarding the requirement for formation of a homeowners association and the right of Paradise to retain ownership of the Common Open Space for its own benefit.

183.   Section 19.29.020 of the PRD Ordinance provides that "every PRD shall have a homeowner's association and agreements to fund such an organization."

184.   Section 19.29.090 of the PRD Ordinance provides that "A homeowner's association shall be formed as a part of the PRD."

185.   The City approved HNW's retention of the Common Open Space during completion of the Homestead PRD but did not exempt HNW from the requirement to form and help organize the HOA.

186.   The Court should enter judgment declaring that the PRD Agreement and the PRD Ordinance require Paradise to convey the Common Open Space to the HOA.

187.   The Court should further enter judgment declaring that the Homestead PRD is complete and that Paradise is now required to assist in the organization of the HOA and to convey the Common Open Space to the HOA.

## VI. RELIEF REQUESTED

Based upon the foregoing, Plaintiffs requests this Court enter judgment as follows:

1.   Awarding Plaintiffs and the Class Members damages in an amount to be proven;

2.   Entering a permanent injunction enjoining the Defendants from further violation of the Consumer Protection Act;

3.   Awarding treble damages pursuant to RCW 19.86.090 and RICO;

COMPLAINT: 26

4.      Awarding reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

5.      Imposing a constructive trust on the assets of Defendants in the amount of the judgment;

6.      Entering a declaratory judgment: (1) declaring the PRD Agreement in full force and effect; (2) declaring the 6th and 7th Amendments to the CC&Rs void; (3) declaring that the CC&Rs require Paradise to assist in the organization of the HOA and to convey the Common Open Space to the HOA, and ordering Paradise to do so; and

7.      Awarding such additional relief as may be warranted.

DATED this 4th day of May, 2020

ANDERSSON CROSS BORDER LAW CORPORATION

_____
K. David Andersson, WSBA No. 24730
Attorneys for Plaintiffs

_____
R. Dallan Bunce, WSBA No. 47213
Attorneys for Plaintiffs

DAVIS LEARY PLLC

_____
Matthew Davis, WSBA No. 20939
Attorneys for Plaintiffs

COMPLAINT: 27

ANDERSSON CROSS BORDER LAW CORPORATION
1305 11TH STREET, SUITE 304
BELLINGHAM, WA 98225
TELEPHONE: (360) 768-1265